UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE F. APARICIO,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST, INC., et al.,<br><br>Defendants. | Case No. 16-cv-03952-JST<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 44 |

Before the Court is Defendant Comcast Cable Communication Management, LLC's ("Comcast") Motion for Summary Judgment. ECF No. 44. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

This is an action for employment discrimination. Plaintiff Jorge F. Aparicio asserts claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(a), for disability discrimination, failure to accommodate, failure to engage in an interactive process, failure to prevent discrimination, retaliation, and race and national origin discrimination, and a claim for wrongful termination in violation of California public policy. ECF No. 1-1 ("Compl.") at 2-3.

### A. Factual Background

#### 1. Mr. Aparicio's Early Employment

Mr. Aparicio was employed by Comcast and its predecessor, AT&T, from 2000 until his termination in September 2014. ECF No. 44-1 at 27; ECF No. 67-3 at 2. Mr. Aparicio is a native of El Salvador and moved to the United States in 1990. ECF No. 44-1 at 26. He was initially hired as an installer trainee in the Burlingame, California office. Id. He was promoted to service technician after just 6 months on the job, and to network technician a year later. Id. at 29. He

would eventually be promoted to the position of advanced technician.  Id. at 30.  As an advanced technician, Mr. Aparicio's responsibilities included "engag[ing] in preventative maintenance, troubleshooting, repair, alignment, and testing of a wide range of technical systems for [Comcast]."  ECF No. 67-3 at 2.  Mr. Aparicio testifies, and Comcast does not dispute, that his work for Comcast had been satisfactory, if not exemplary, for the first 12 years of his employment at Comcast—during this time, he "qualified for and received every quarterly bonus [he] was eligible for . . . [and] never received a negative annual performance review or criticism . . . ."[1]  Id.

At all relevant times, Mr. Aparicio worked out of Comcast's Burlingame office, and was a member of the Communication Workers of America Union.  ECF No. 44-1 at 27; ECF No. 44-2 at 3.  As a union employee, Mr. Aparicio's employment was governed by the union's collective bargaining agreement ("CBA").  Article 10 of the CBA provides for "Progressive Discipline," pursuant to which an employee could only be fired after being given at least one written warning and at least one suspension.  ECF No. 44-2 at 3.  The CBA makes an exception for so-called "Serious Offenses," which can result in immediate termination.  Id.  Serious offenses include, among other things:  (i) "[c]arelessness, including violation of the Employer's safety rules and regulations, endangering the safety of oneself or others or endangering the Employer's property and equipment"; (ii) "[w]illful falsification of employment application, service reports, work orders, route sheets, time sheets or other Employer records;" and (iii) "[u]nreasonable failure or refusal to follow management work directives and orders."  Id. at 9-10.

### 2.      Comcast's Discipline and Termination of Mr. Aparicio

Mr. Aparicio alleges that beginning January 2013 he was "targeted" by his supervisors.  ECF No. 67-3 at 6-7.  Around this time, Mr. Aparicio lodged a complaint with a Comcast human resources representative, Barbara Lara.  See ECF No. 65-4 at 104.  According to a set of notes related to this complaint, which were dated January 24, 2013 and produced by Comcast in the litigation, Mr. Aparicio complained that "Management wants to fire us" and expressed concern that he was being "targeted and picked on."  Id. at 105.  He recounted an incident that had

_____

[1] According to Mr. Aparicio, his first negative performance review was in January 26, 2012.  ECF No. 67-3 at 2.

happened earlier in the month, where he was disciplined for declining to take a service call at around 1:30 a.m. Id.; ECF No. 67-3 at 5 n.7. Mr. Aparicio claimed he called the dispatcher to let them know he was too drowsy to safely drive to the job, but Comcast disciplined him because he did not call inform the on-call supervisor. ECF No. 65-4 at 104. He also complained that he had been unreasonably disciplined in writing for loss of company property – misplacing a DSAM meter – even though he found the meter just two days later. Id. The incidents Mr. Aparicio complained of happened while he was supervised by Jason Aguas, a temporary supervisor who reported to Matt Silvey. ECF No. 44-1 at 32-33; ECF No. 67-3 at 7. Mr. Aparicio claims that just a few days after speaking with his human resources representative Ms. Mara, he was given a disciplinary write-up in retaliation for his complaint.[2] ECF No. 65 at 11.

Beginning May 2013, Mr. Aparicio reported to a new supervisor, Jonathan Fisher, who reported to Matt Silvey. ECF No. 44-1 at 34-35. At the end of 2013, Mr. Fisher conducted a year-end review of Mr. Aparicio, and concluded that Mr. Aparicio's performance "achieve[d] expectations." ECF No. 44-1 at 106. However, Comcast alleges that beginning in 2013, Mr. Aparicio exhibited a "[p]attern of [p]oor performance," culminating in three separate incidents in 2014 – incidents that Comcast contends are "serious offenses" under the CBA – for which Mr. Aparicio was disciplined by Mr. Fisher and, eventually, terminated. ECF No. 44 at 6.

### a. January 2014 Suspension

Mr. Fisher, while reviewing Mr. Aparicio's "productivity reports" noticed a "low volume of completed work" between January 24 and January 26, 2014. ECF No. 44-1 at 159. Upon further investigation, including an interview of Mr. Aparicio, Mr. Fisher concluded that: (1) on January 24, 2014, Mr. Aparicio took an unscheduled break for roughly an hour during on-duty time to meet someone at a restaurant parking lot; (2) Mr. Aparicio worked tickets for more than two hours on January 25 and January 26, 2014 without notifying his supervisors; and (3) on the same days, Mr. Aparicio incorrectly reported the time of his lunch breaks. Id. According to Mr. Aparicio, he was never told about the rule requiring him to report jobs taking more than two hours,

---

[2] As Mr. Aparicio did not submit this write-up in connection with his opposition or testify to it in his sworn declaration, the Court only notes the allegation here and does not rely on this evidence.

ECF No. 67-3 at 9, and it was common for jobs in his service area to take more than two hours because they included backyards and other areas that could be difficult to access, ECF No. 65-2 at 72-73.  Mr. Aparicio admitted to meeting the mother of his son in a parking lot during working hours to give her child support money, but testified that he did so during his bathroom break and that the meeting took no more than 15 minutes.  ECF No. 65-2 at 15-16.  Mr. Aparicio was suspended for these violations for three days without pay.  ECF No. 44-1 at 159.

### b.  March 2014 Suspension

In March 2014, Mr. Aparicio completed a ticket for rebuilding an amplifier.  Id. at 162.  The next day, after a service outage, another technician discovered that the bolts that secure the amplifier housing were loose, allowing water to seep into the amplifier and rendering it inoperable beyond repair.  Id.  Mr. Aparicio testifies that another technician, Joel Sawacki, had worked on one of the two amplifiers on site the previous day, and that Mr. Aparicio properly repaired and tightened bolts on the amplifier he was responsible for repairing.  ECF No. 67-3 at 10.  He noticed that some bolts for the second amplifier were missing, but did not have extra bolts with him and could not replace them.  Id.  Mr. Aparicio was given another three-day suspension.  ECF No. 44-1 at 162-63.  Mr. Aparicio grieved the suspension through the union, and it was reduced to a written warning, though he ended up serving the suspension anyway.  ECF No. 67-3 at 11.

### c.  August 2014 Quality Control Checks

In view of what he perceived as Mr. Aparicio's performance issues, Mr. Fisher began regular audits of Mr. Aparicio's work.  This audit revealed two additional quality issues in August 2014.  See ECF No. 44-1 at 71, 73.  Mr. Fisher claims that on August 21, 2014, after working a job on Park Pacifica Avenue, Mr. Aparicio failed to tighten four out of eight bolts securing the node housing, an amplifier that feeds an entire area.  Id. at 165.  Mr. Fisher also reported that Mr. Aparicio failed to properly secure a vault lid in front of a home, creating a tripping hazard.  Id.  At another ticket, Joy Avenue, an inspection revealed a large signal leak radiating from a "gash" in the hardline cable, and that someone had attempted to dampen the leak by wrapping a crack in the cable with aluminum foil.  Id. at 243.  Comcast considers such significant leaks to be a safety hazard that must be immediately repaired, and technicians are required to carry GPS equipment –

a so-called CPAT unit – to detect leaks so that they can be quickly mitigated.  Id. at 246, 249-51.

Mr. Fisher testifies that the CPAT data from Mr. Aparicio's truck showed a large leak around the

Joy Avenue job at the time Mr. Aparicio arrived and when he left the job site.  Id. at 249.  Because

he felt the circumstances were so unusual and extreme, Mr. Fisher called his supervisor, Mr.

Silvey, to personally inspect the job site and observe the leak.  Id. 248.  Mr. Aparicio disputes Mr.

Fisher's testimony regarding the leak, arguing that the CPAT data Mr. Fisher reviewed showed a

leak at a different address than the job site, and that the data was not for his truck.  ECF No. 67-3

at 12.  He also notes that Comcast waited roughly 48 hours to fix the leak (to allow for Mr. Silvey

to inspect the site), and, if the leak was of the magnitude described by Mr. Fisher, such a delay

would have been inconsistent with Comcast's own safety standards.  Id.  After interviewing Mr.

Aparicio and finding no suitable explanation for the alleged violations, Mr. Fisher notified Mr.

Aparicio of his termination in September 2014.  See ECF No. 44-1 at 166.

Mr. Aparicio initiated a grievance process through his union.  The parties arbitrated their

dispute before Barry Winograd, who found just cause for Mr. Aparicio's termination and denied

the union's grievance.[3]  ECF No. 44-1 at 8-19.

### 3. Mr. Aparicio's Workplace Injury and Comcast's Accommodation

In March 2014, Mr. Aparicio suffered a workplace injury affecting his "elbow, forearm,

knee, [and] spine."  Id. at 60.  As a result of this injury, Mr. Aparicio was limited in his ability to

bend, stoop, and kneel or reach overhead, and was told not to lift any weight over 5 pounds.  Id. at

---

[3] Comcast asks the Court to consider the arbitrator's decision upholding Comcast's termination decision in determining whether Comcast had a legitimate business reason for terminating Mr. Aparicio.  See ECF No. 69 at 4 n.1 (citing Joson v. The Permanente Medical Group, Inc., No. C 11-01018 JL, 2012 WL 726307 (N.D. Cal. Mar. 1, 2012).)  The Court declines to do so.  As other courts have noted in declining to consider arbitration decisions, the arbitration involves slightly different issues – whether just cause existed for termination under the CBA versus employment discrimination under California law – and different evidentiary standards.  See Malone v. Potter, No. CV 07-05530 MMM (FFMx), 2009 WL 10672523, at *11-12 (C.D. Cal. Feb. 25, 2009) (granting motion in limine to exclude evidence of an arbitration decision in employment discrimination action, noting different issues and evidentiary standards and that decision was redundant of evidence already of record in the case).  Moreover, Mr. Aparicio believes his representation by his union-provided attorney was inadequate.  See ECF No. 67-3 at 16 (union attorney did not call third-party witnesses, opted to forego opening statement, and did not challenge admissibility of key evidence).  The Court has ample record evidence to decide this motion and need not rely on the findings of an arbitrator in a different proceeding.

61. Based on the work restrictions he was given by his doctors, Mr. Aparicio admitted he was unable to perform his usual work duties due to his injury. ECF No. 44-1 at 64. Mr. Aparicio conveyed this information to his supervisor Mr. Fisher, who in consultation with his supervisor Mr. Silvey and Comcast's Leave of Absence Specialist, assigned Mr. Aparicio to "light duty" work, including e-waste monitoring and other desk work. Id. at 55-56, 62; ECF No. 44-2 at 4. However, Mr. Aparicio was told after a few weeks that there was no further light duty work available, and he was placed on a three-month workers compensation leave of absence. ECF No. 67-3 at 22. Though Mr. Aparicio could not perform his normal duties, he believed he was capable of doing work in the field, including, for example, assisting other technicians in a "ride-along" capacity. ECF No. 44-1 at 67-68. Mr. Aparicio's work restrictions were lifted in June 2014, after which he returned to his normal duties as an advanced technician. ECF No. 44-2 at 4.

### B. Procedural History

Mr. Aparicio filed his original complaint in this action in the Superior Court of the State of California for the County of San Mateo on March 23, 2016. ECF No. 1-1. On July 13, 2016, Comcast removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1441(b). ECF No. 1.

On April 21, 2017, Comcast filed a motion for summary judgment. ECF No. 44. On May 5, 2017, Ray Bacon, counsel for Mr. Aparicio, filed a declaration requesting additional discovery pursuant to Federal Rule of Procedure 56(d). ECF No. 52. In that declaration, Mr. Bacon stated that additional time to complete discovery "will produce evidence, by deposition testimony and document production, that will show that first, the alleged facts cited by Defendant to justify the termination of Plaintiff's employment are false and are pretext" and that the disciplinary records sought in Mr. Aparicio's May 4, 2017 discovery letter, then pending before Judge Laporte, "will show that Defendant engaged in disparate treatment between employees born in the United States and/or of one racial background vs those employees born in other countries and/or of different racial backgrounds." Id. at 2. On June 14, 2017, the Court granted Mr. Aparicio's Rule 56(d) motion, and deferred consideration of Comcast's summary judgment motion pending completion of outstanding discovery. ECF No. 60. The parties have since completed all outstanding

discovery. Mr. Aparicio filed his opposition to the motion for summary judgment on July 13, 2017, ECF No. 65, and Comcast filed its reply on July 20, 2017, ECF No. 69.

## II.     LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation

United States District Court
Northern District of California

and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

**III.    DISCUSSION**

Comcast seeks summary judgment on the following claims and grounds:

(1)     "Plaintiff's first, sixth, and seventh claims for Disability, Race and National Origin Discrimination under the California Fair Employment and Housing Act ("FEHA") are subject to summary judgment because Plaintiff cannot establish a prima facie case of discrimination and does not have evidence of discriminatory pretext overcoming legitimate reasons for Plaintiff's termination of employment";

(2)     "Plaintiff's second claim for Failure to Accommodate in violation of FEHA is subject to summary judgment because Plaintiff cannot establish that Comcast failed to accommodate him during his alleged period of disability";

(3)     "Plaintiff's third claim for Failure to Engage in an Interactive Process in violation of FEHA is subject to summary judgment because Plaintiff cannot establish that Comcast failed to engage in the interactive process as required by law";

(4)     "Plaintiff's fourth claim for Failure to Prevent Discrimination in violation of FEHA is subject to summary judgment because it is derivative of the discrimination claims";

(5)     "Plaintiff's fifth claim for Retaliation in violation of FEHA is subject to summary judgment because Plaintiff cannot establish that he engaged in a protected activity or that the termination decision related to any protected activity"; and

(6)     "Plaintiff's eighth claim for Wrongful Termination in Violation of Public Policy is subject to summary judgment because it is premised on the same elements and facts related to Plaintiff's FEHA claims, which also fail as a matter of law."

ECF No. 44 at 6-7.  Assuming any of Mr. Aparicio's claims survive summary judgment, Comcast seeks summary judgment on Mr. Aparicio's claim for punitive damages because "Plaintiff cannot show, by clear and convincing evidence, that any managing agent of Comcast acted in a malicious manner or that any managing agent knowingly ratified a malicious act."  <u>Id.</u> at 7.  The Court

addresses each ground for summary judgment in turn.

### A. FEHA Discrimination Claims

In evaluating FEHA discrimination claims, courts use the burden-shifting analysis set forth by the Supreme Court. See Rudwall v. Blackrock, Inc., No. C-09-5176 TEH, 2011 WL 767965, at *5 (N.D. Cal. Feb. 28, 2011) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)). Under that analysis, a plaintiff must first make out a prima facie case by showing that: (1) he was a member of a protected class; (2) he was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination; and (4) "some other circumstance suggests discriminatory motive." See id. (citing Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 355 (2000)). The Ninth Circuit has repeatedly emphasized that a plaintiff's burden in establishing a prima facie case of discrimination is "minimal." Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1094 (9th Cir.2005).

"Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision." Haley v. Cohen & Steers Capital Mgmt., Inc., 871 F. Supp. 2d 944, 953 (N.D. Cal. 2012) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). An employer's reasons need not rest on true information. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir.2002). Instead, courts require only that the employer "honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." Id. (citation and quotation omitted).

If the employer meets this burden, the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons for its actions are a mere pretext for unlawful discrimination. See Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir.2010). A plaintiff may do this by producing either direct evidence of discriminatory motive, which need not be substantial, or circumstantial evidence that is "specific and substantial" evidence of pretext. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221-22 (9th Cir.1998). If the plaintiff succeeds in demonstrating a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for discrimination, then the case proceeds beyond the summary judgment stage.

United States District Court
Northern District of California

1.      **Prima Facie Case of Disability Discrimination**

"To establish a prima facie case of disability discrimination, the plaintiff must establish that he suffered from a disability, that he could perform the essential duties of the job, and that he was subjected to an adverse employment action because of the disability." McCree v. State of California Dept. of Conservation, No. 12-cv-4127-JST, 2014 WL 1936504, *3 (N.D. Cal. May 14, 2014).

Comcast contends that Mr. Aparicio "cannot establish a prima facie case of disability discrimination because he cannot show that at the time of his termination he was suffering from a disability or that Mr. Silvey or Mr. Fisher had any animus towards disabled employees." ECF No. 44 at 18. Comcast notes that after a period of disability leave, Mr. Aparicio returned to his usual duties as an advanced technician in June 2014, and worked without any medical restrictions until his termination in September 2014. Id. at 18. Thus, according to Comcast, Mr. Aparicio was not suffering a disability at the time of his termination, and he could not have been subjected to an adverse employment action because of his disability.

Mr. Aparicio does not specifically address Comcast's argument, except to note that (1) Comcast may have violated 2 C.C.R. § 11068 by placing Mr. Aparicio on leave during portions of his disability when he could have performed other light duty tasks; and (2) Comcast began the alleged discrimination two months after Mr. Aparicio returned from disability leave. ECF No. 65 at 18.

The Court finds that Mr. Aparicio has failed to establish a prima facie case of disability discrimination. It is undisputed that, during his disability leave, Mr. Aparicio was unable to perform his normal duties. ECF No. 44-1 at 95 (Mr. Aparicio testifying that based on the restrictions he was given by his doctors, he could not perform the functions of his advanced technician position). Thus, Mr. Aparicio cannot establish that, despite his disability, "he could perform the essential duties of the job . . . ." McCree, 2014 WL 1936504 at *3. Moreover, the Court agrees with Comcast that Mr. Aparicio cannot establish disability discrimination when he had actually returned to normal work months before his termination. Martin v. Genesco, Inc., CV 07-1005 LJO SMS, 2008 WL 4816455, *8 (E.D. Cal. Nov. 5, 2008) (granting summary judgment

in favor of employer where plaintiff-employee could not show that he was disabled following his return to work from disability leave). If, as Mr. Aparicio contends, Comcast discriminated against him based on his disability when it made its decision to terminate him, it stands to reason that Comcast would have terminated him either shortly after his injury or during his disability leave. The fact that Comcast not only provided him light duty work but then allowed him to resume his normal duties shows that its termination decision a few months later was unrelated to his disability. The Court therefore finds that there is no genuine issue of material fact concerning Mr. Aparicio's claims based on disability discrimination warranting denial of summary judgment.

### 2.    Prima Facie Case of Race/National Origin Discrimination

To establish a prima facie case of discrimination based on race or national origin, Mr. Aparicio must establish that (1) he was a member of a protected class; (2) he was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination; and (4) some other circumstance suggests discriminatory motive. Guz, 24 Cal.4th at 355.

Comcast does not dispute that Mr. Aparicio has established the first and third elements of the prima facie FEHA discrimination claim. However, Comcast contends that Mr. Aparicio cannot establish the second and fourth elements—namely, that he was performing competently as of the date of his termination and that circumstances suggest a discriminatory motive for his termination. ECF No. 44 at 13. Comcast argues that Mr. Aparicio was not performing competently as of the date of his termination, as evidenced by the fact that he "was already on progressive discipline when he failed substantial components related to craftsmanship" and had already been disciplined for "serious offenses." Id. at 19. Given these performance issues, Comcast asserts that Mr. Aparicio's termination was warranted and not suggestive of a discriminatory motive.

Mr. Aparicio counters that all of the purported performance issues identified by Comcast as a basis for his termination "stem solely from [allegations made by] Plaintiff's supervisor, Jonathan Fisher," who Mr. Aparicio contends discriminated against him, and that before this time Mr. Aparicio's performance had been satisfactory. See ECF No. 65 at 27. Mr. Aparicio notes that

he "serviced customers on a daily basis" and that Comcast provides no evidence that "customers ever complained about any work that [Mr. Aparicio] had performed in their units." Id. at 27. As to the specific incidents that led to his termination, Mr. Aparicio maintains that there was no leak at the Joy Avenue property, and contends that if there had been a leak of the magnitude reported by Fisher, customers would have experienced a service disruption and Comcast would have repaired the leak immediately rather than waiting roughly two days to do so. Id.; see also ECF No. 67-3 at 14-15. Finally, Mr. Aparicio contends that Comcast imposed harsher discipline on him than it did on other Caucasian and non-Hispanic technicians who committed comparable violations. See ECF No. 67-3 at 16-21.

The Court finds that Mr. Aparicio has established a prima facie case of discrimination based on race or national origin, particularly given the "minimal" showing required. Coghlan, 413 F.3d at 1094. Comcast does not provide any evidence that, for the first 12 years of Mr. Aparicio's career at Comcast, his work was anything but satisfactory. The incidents for which Mr. Aparicio was disciplined and ultimately terminated occurred over a two-year period, largely coinciding with the assignment of a new supervisor. Thus, it is at least possible that Mr. Aparicio's termination was for some reason other than simply quality lapses. This, combined with the comparator evidence that Mr. Aparicio submits, is sufficient to establish that Mr. Aparicio was performing competently and that there may have been some discriminatory motive for his termination.

### 3. Comcast's Reasons for Terminating Mr. Aparicio's Employment and Pretext for Race/National Origin Discrimination

Comcast argues that, even if Mr. Aparicio has "establish[ed] a prima facie case for race and/or national origin discrimination, the overwhelming evidence demonstrates that Comcast had a legitimate, non-discriminatory basis for its decision to terminate Mr. Aparicio's employment and there is no evidence demonstrating pretext." ECF No. 44 at 19. Comcast notes that despite having "worked less than six months in 2014 (not including the few months he was on light duty and a leave of absence)," Mr. Aparicio received two written warnings, a suspension, and two failed quality checks all in one year. Id. According to Comcast, Mr. Aparicio's case rests "on his unsubstantiated belief that Mr. Fisher and Mr. Silvey conspired to terminate his employment,"

which is belied by the fact that he testified that he had a good working relationship with his supervisors.  Id. at 20; see also ECF No. 44-1 at 42 (Mr. Aparicio testifying that he had a "good working relationship with Mr. Fisher" prior to December 2013).  Thus, Comcast contends that it had a legitimate, nondiscriminatory reason for terminating Mr. Aparicio, and Mr. Aparicio cannot show that this reason was simply pretext.

While the Court does have some doubt as to whether Mr. Aparicio actually committed all the violations for which he was disciplined, and finds some of the discipline imposed by Comcast to be excessive given the nature of the violations, Comcast has provided a plausible basis for Mr. Aparicio's termination.  The Court finds that Comcast "honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless."  Villiarimo, 281 F.3d at 1063.

Thus, to survive summary judgment, Mr. Aparicio must raise a triable issue of material fact as to whether Comcast's proffered reasons for its actions are a mere pretext for unlawful discrimination.  Hawn, 615 F.3d at 1155.  As there is no direct evidence of a discriminatory motive, Mr. Aparicio must provide "specific and substantial" circumstantial evidence supporting a pretext for his termination. Godwin, 150 F.3d at 1221-22.  To do so, Mr. Aparicio primarily relies on so-called comparator evidence – disciplinary records for seven Comcast technicians who, according to Mr. Aparicio, were given disparate discipline for comparable violations.

As an initial matter, Comcast urges the Court to disregard these disciplinary records because "several of these documents are not documents that were ever authenticated by Comcast." ECF No. 69 n.4.  The Court declines to do so.  Mr. Aparicio's counsel submitted with his opposition a declaration under penalty of perjury attaching true and correct copies of requests for admission seeking authentication of the disciplinary records and Comcast's response thereto.  See ECF No. 65-4 at 51-69.  Moreover, it is clear from the face of the documents, and Plaintiff's counsel avers, that they were produced by Comcast.  By producing the documents, Comcast deemed the documents authentic.  Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n. 12 (9th Cir.1996) (holding that documents produced by a party in discovery were deemed authentic when offered by the party-opponent); 31 Fed. Practice & Procedure:  Evidence § 7105, at 39 ("Authentication can also be accomplished through judicial admissions such as . . .

production of items in response to . . . [a] discovery request."); <u>Siebert v. Gene Sec. Network, Inc.</u>, 75 F. Supp. 3d 1108, 1115 (N.D. Cal. 2014) (documents deemed authentic because they were produced by defendant in discovery). Thus, the Court finds, at least for purposes of summary judgment, that the records themselves are admissible.[4]

The Court agrees with Comcast, however, that Mr. Aparicio's opinion testimony about these records and what they show is inadmissible. For most of his testimony on the comparator evidence, Mr. Aparicio does not claim any personal knowledge regarding the records, the incidents, or the employees to which they pertain. Nor has he provided any basis to qualify him as an expert in these matters. Thus, the Court's review of the comparator evidence is confined to the records themselves and any matters on which Mr. Aparicio has personal knowledge.

Mr. Aparicio points to the following incidents, which he believes show disparate discipline of non-Hispanic technicians:

- Joel Sawacki, who Mr. Aparicio knows to be Caucasian and born in the United States and based in the Burlingame office, ECF No. 67-3 at 17, was given a written warning by Mr. Silvey in March 2013 for backing his car into a utility pole, resulting in damage to the aerial lift basket that left it inoperable. ECF No. 67-5 at 9. In April 2013, Mr. Sawacki was given another written warning by Mr. Silvey for damaging a DSAM meter he had left on top of his truck, rendering it inoperable. <u>Id.</u> at 8. Both warnings were for "carelessness," a serious offense under the CBA. <u>Id.</u> at 8-9. Mr. Aparicio also testifies that Mr. Sawacki failed to tighten bolts for an amplifier at a job site, resulting in an outage for which Mr. Aparicio was ultimately disciplined but Mr. Sawacki was not. ECF No. 67-3 at 11.

- Scott Lovel was given a written warning for "[w]illful falsification" of company records, another serious offense under the CBA, for submitting records indicating that he was on a job when he had in fact left the job early, and for turning his Nextel phone off. ECF No. 67-5 at 11. He was given another written warning for carelessness in March 2012, when he left his DSAM meter in the break room overnight. <u>Id.</u> at 12. In October 2012, Mr. Lovel was disciplined

---

[4] Comcast may, however, raise any objection, including as to authenticity, with respect to these records at trial should this matter proceed that far.

for falsification of records and failure to comply with management directives when he took an unscheduled lunch break between jobs and did not report the break to his supervisors.  Id. at 13.

- Robert Nelson was given a written warning for falsification of records and carelessness for an incident in May 2012 in which he logged a job as having been completed when the line had not been properly grounded.  Id. at 15.  Mr. Nelson was disciplined again in May 2013 for carelessness when a Comcast QA contractor determined that he had not connected the ground wire to the ground block, and had not installed an acqua connector to keep out water.  Id. at 17.

- Eartis Beck was given an oral warning for insubordination and unreasonable failure to follow management directives for a September 2011 incident in which he "left both drops hanging low and did not change the fittings at the tap," and did not ground an MDU box.  Id. at 21.  He was disciplined again in February 2013 for carelessness where an audit showed that he connected a ground wire to a splitter and left a cable hanging on the side of a house.  Id. at 20.

- Alexis Marin was given an oral warning for unreasonable failure to follow management work directives following a February 2012 incident where he left his laptop in his truck.  Id. at 23.  He was given an oral warning for carelessness in March 2013, when he dropped his iPhone during a job and stepped on it breaking the screen.  Id. at 24.

- Iksan Kamaruddin was given an oral warning for unreasonable failure to follow management work directives after a September 2012 incident where he left his laptop visible in his truck.  Id. at 28.  He was given a written warning in May 2013 for carelessness and willful falsification of company records when he reported a job in Half Moon Bay was complete, but a QC audit revealed he had failed to ground the line.  Id. at 26.

- Stephen Agnostini was given an oral warning for unreasonable failure to follow management work directives following a September 2011 incident in which he failed to install aqua tight connectors, among other things, at a job in San Mateo.  Id. at 30.

Mr. Aparicio argues that he was given harsher discipline – multiple suspensions and formal written discipline – for many of the same violations, including allegedly failing to tighten bolts, failing to properly report lunch and job times, and taking unscheduled personal breaks.  ECF No. 67-3 at 17-21.

Comcast counters that, with the exception of Mr. Sawacki, Mr. Aparicio only offers his own unsupported speculation that the technicians involved in the comparator records were non-Hispanic, and generally does not have personal knowledge of the incidents that led to the discipline in each case. ECF No. 69 at 11. Comcast further contends that none of the comparator had the same disciplinary record as Mr. Aparicio did in 2014, with "three corrective actions within nine months" leading to his termination. Id. at 12. Comcast notes that aside from Mr. Sawacki, none of the other employees were disciplined by Messrs. Fisher and Silvey, who were involved in Mr. Aparicio's termination, and there is no indication that these disciplinary records were reviewed by Comcast's Director of Employee of Engagement, who reviewed Mr. Fisher's investigation and agreed with his decision to terminate Mr. Aparicio. Id. at 12-13.

Mr. Aparicio also submits a declaration of Alberto Mora, who, like Mr. Aparicio, is a native of El Salvador, and was recently terminated after many years of seemingly satisfactory service. See ECF No. 65-5. Mr. Mora testifies that he was terminated in 2016, after "26 years of excellent service" to Comcast for allegedly failing a ladder certification test. Id. at 2. He testifies that other employees who were of comparable physical condition, but were not Hispanic, were given ladder certification. Id. at 2-3.

The Court finds that, with all inferences drawn in Mr. Aparicio's favor, he has provided sufficient evidence to create a dispute of material fact that precludes summary judgment – namely whether, given the comparator evidence, Comcast's stated basis for terminating him was pretext for a discriminatory motive. Comcast places significant weight on the fact that, with the exception of Mr. Sawacki, none of the other employees were disciplined by Mr. Fisher or Mr. Silvey. But the Ninth Circuit has held that whether the purported comparator employees had the same supervisor, while relevant, is not determinative of the issue of whether the employees are similarly situated for purposes of a comparator analysis. Hawn, 615 F.3d at 1157. More generally, whether the comparator employees are similar to the plaintiff is a question of fact that is more properly left to the jury. See id. ("We have stated that 'whether two employees are similarly situated is ordinarily a question of fact.'") (quoting Beck v. United Food & Commercial Workers Union Local 99, 506 F.3d 874, 885 n.5 (9th Cir. 2007).

The Court acknowledges that the evidence submitted by Mr. Aparicio suffers from some shortcomings – none of the records involves the exact sequence of discipline that occurred in Mr. Aparicio's case and Mr. Aparicio does not have personal knowledge about most of the records. However, given the comparator evidence, the testimony of Mr. Mora, and Mr. Aparicio's decade of relatively incident free employment with Comcast prior to his termination, the Court concludes that a jury could reasonably decide that Mr. Aparicio was terminated based on his race or national origin and not his performance issues. Fed. R. Civ. P. 56; Anderson, 477 U.S. at 252 (summary judgment improper where "there . . . [is] evidence on which the jury could reasonably find for the plaintiff").

### B.     Failure to Accommodate

The elements of a reasonable accommodation claim are similar to the elements of a disability discrimination claim, but "there are important differences." Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 256 (2000). To establish a reasonable accommodation claim, an employee must show that (1) the employee has a disability under FEHA, (2) the employee is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the employee's disability. Scotch v. Art Inst. of California Orange Cnty., Inc., 173 Cal. App. 4th 986, 1009-10 (2009). "FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks"; only a "reasonable" one. Raine v. City of Burbank, 135 Cal. App. 4th 1215, 1222 (2006). A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 974 (2008). Examples include job restructuring, modified work schedules, and reassignment to a vacant position. "Although the question of reasonable accommodation is ordinarily a question of fact, when the undisputed evidence leads to only one conclusion as to the reasonableness of the accommodation sought, summary judgment is proper." Raine, 135 Cal. App. 4th at 1227 n.11.

Comcast does not dispute that Mr. Aparicio had a disability under FEHA, but argues that Mr. Aparicio could not perform the essential functions of his job and that it reasonably

17

accommodated Mr. Aparicio by assigning him "light duty" work, including e-waste monitoring and other desk work. ECF No. 44 at 24; ECF No. 44-1 at 55-56, 62; ECF No. 44-2 at 4. Comcast admits it placed Mr. Aparicio on a leave of absence when it determined there was not enough light duty work available to keep him busy, but argues that it was not "required to create a non-existent light duty position for him." ECF No. 44 at 24.

Mr. Aparicio contends that, even though he could not perform his normal duties, he "was capable of working on light duty and there were numerous tasks he could have performed." ECF No. 65 at 18; see also ECF No. 67-3 at 22. For example, Mr. Aparicio testified that he could have assisted other technicians in a "ride-along" capacity. ECF No. 44-1 at 67-68.

Mr. Aparicio does not argue that, with reasonable accommodation, he could have performed his normal duties. Thus, the question before the Court is whether Comcast should have provided Mr. Aparicio with additional light duty work or allowed him to ride along to service calls instead of placing him on leave for the duration of his disability.

"California law is emphatic that an employer has no affirmative duty to create a new position to accommodate a disabled employee." Raine, 135 Cal. App. 4th at 1224. Specifically, "an employer is not required to create light-duty positions for purposes of accommodating a disabled employee unable to perform the essential functions of the position for which he or she was hired." Id. at 1224; see also Watkins v. Ameripride Servs., 375 F.3d 821, 824 (9th Cir.2004) (employer not required to create full-time special delivery position that did not previously exist).

Here, it is undisputed that Mr. Aparicio could not perform his normal duties as an advanced technician during his period of disability. Comcast provided him light duty work while it was available, but placed him on leave when it could find no more work that met Mr. Aparicio's qualifications. As Comcast correctly argues, it was not obligated to create light duty work where none exists. Mr. Aparicio has not provided any evidence, beyond his own speculation, that such light duty work existed and was not made available to him. The Court therefore finds that there is no genuine issue of material fact concerning Mr. Aparicio's claim based on reasonable accommodation warranting denial of summary judgment.

### C. Failure to Engage in Interactive Process

FEHA prohibits an employer from "fail[ing] to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code § 12940(n). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively. For the process to work both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process." Nadaf-Rahrov, 166 Cal. App. 4th at 984-85 (internal quotation and alterations omitted). "[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n). If the employer is responsible for a later breakdown in the process, it may be held liable." Id.

Here, there is no suggestion in the record that Comcast failed to communicate or exchange information with Mr. Aparicio regarding reasonable accommodations for his disability. To the contrary, after Mr. Aparicio suffered his workplace injury, he conveyed his workplace restrictions to his supervisor Mr. Fisher, who in consultation with his supervisor Mr. Silvey and Comcast's Leave of Absence Specialist, assigned Mr. Aparicio to light duty work that met his qualifications. ECF No. 44-1 at 55-56, 62; ECF No. 44-2 at 4. While Mr. Aparicio disputes Comcast's claim that after a few weeks there was no light duty work available, he does not provide any evidence that such work existed aside from his own speculation, and in his opposition he does not provide any evidence or argument relating to his claim for failure to engage in the interactive process. The Court therefore finds that there is no genuine issue of material fact concerning Mr. Aparicio's claim based on failure to engage in the interactive process.

### D. Failure to Prevent Discrimination

It is an unlawful employment practice under FEHA "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring" in the

United States District Court
Northern District of California

1    workplace. Cal. Govt. Code § 12940(k). "When a plaintiff seeks to recover damages based on a

2    claim of failure to prevent discrimination or harassment he must show three essential elements: 1)

3    plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all

4    reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused

5    plaintiff to suffer injury, damage, loss or harm." Leland v. City & Cty. of San Francisco, 576 F.

6    Supp. 2d 1079, 1103 (N.D. Cal. 2008).

7        Comcast argues that there can be no liability for a failure to prevent discrimination claim

8    because Mr. Aparicio cannot establish a viable claim for unlawful discrimination on the basis of

9    his disability, race, or national origin. ECF No. 44 at 26. Because the Court will deny summary

10   judgment on Mr. Aparicio's FEHA claims for discrimination based on race or national origin, the

11   Court will also deny summary judgment on his claims for failure to prevent discrimination under

12   FEHA. See Guitron v. Wells Fargo Bank, N.A., No. 10-cv-03461 CW, 2012 WL 2708517 (N.D.

13   Cal. July 6, 2012) (denying motion for summary judgment as to failure to prevent age

14   discrimination claim, where underlying age discrimination claim survived summary judgment);

15   Thompson v. C&H Sugar Co., No. 12-cv-00391 NC, 2014 WL 1266804, *9 (N.D. Cal. Mar. 24,

16   2014) (same).

17       **E.     Retaliation**

18       To prevail on a claim for retaliation under FEHA, "a plaintiff must show (1) involvement

19   in a protected activity, (2) an adverse employment action and (3) a causal link between the two."

20   Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000). "'Protected activity' includes

21   asserting one[']s civil rights by complaining of harassing conduct." Ludovico v. Kaiser

22   Permanente, 57 F. Supp. 3d 1176, 1197 (N.D. Cal. 2014).

23       Mr. Aparicio claims he was retaliated against after he lodged a complaint with a Comcast

24   human resources representative, Barbara Lara. See ECF No. 65-4 at 104. Comcast argues that

25   Mr. Aparicio cannot establish a retaliation claim because his complaint to Ms. Lara was not about

26   discrimination or retaliation and because he cannot show that his termination was related to his

27   complaint to Ms. Lara.

28       The Court finds that Mr. Aparicio has provided evidence that he engaged in a protected

activity.  According to notes of his interview with Ms. Lara, Mr. Aparicio complained that "Management wants to fire us" and expressed concern that he was being "targeted and picked on." Id. at 105.  Though the notes do not clarify who Mr. Aparicio felt was being targeted, drawing all inferences in Mr. Aparicio's favor, it is reasonable to assume that by "us" he meant people like him, which could be Hispanics or people from El Salvador.  However, the Court finds that Mr. Aparicio has not established a causal link between his January 2013 complaint to Ms. Lara and his September 2014 termination.  As Comcast points out, Mr. Aparicio has provided no evidence that the people involved in his termination, Mr. Fisher and Mr. Silvey, were even aware of his complaint, let alone that the complaint was the basis for their decision to discipline and terminate him.  ECF No. 44 at 26.  At most, Mr. Aparicio can show a sequence of events in which he was disciplined over the year following his complaint.  This is insufficient to survive summary judgment.  Chen v. County of Orange, 96 Cal. App. 4th 926, 931 (2002) ("[I]t is well established that a plaintiff in a retaliation suit must show, as part of his or her prima facie case, some causal connection between an adverse employment action and the original complaint of discrimination.  Mere sequence is not enough—that would be the classic logical fallacy of 'post hoc ergo propter hoc' (after the fact, therefore because of the fact).").

The Court therefore finds that there is no genuine issue of material fact concerning Mr. Aparicio's claim for retaliation.

**F.     Wrongful Termination in Violation of Public Policy**

Comcast seeks summary judgment on Mr. Aparicio's common law claim for wrongful termination, arguing that "the wrongful termination claim fails for the same reasons as Plaintiff's FEHA claims alleged in his First, Second, Third, Fifth, Sixth, and Seventh claims" for disability and race/national origin discrimination.  As the Court has denied summary judgment on Mr. Aparicio's FEHA discrimination claim based on race or national origin, the Court will deny summary judgment on his common law wrongful termination claim.

**G.     Punitive Damages**

Mr. Aparicio concedes that, since he did not "depose a managing agent of [Comcast], he . . . has not stated a case for punitive damages here."  ECF No. 65 at 31.  The Court will

therefore grant summary judgment in Comcast's favor on Mr. Aparicio's claim for punitive damages.

## IV.    EVIDENTIARY OBJECTIONS

Comcast lodges a number of generic objections to a significant portion of the record. ECF No. 69 at 17-19. Many of these objections are in fact arguments about the significance of the evidence, not their admissibility. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 17-18 (objections regarding relevance, inconsistency with sworn testimony). Others are boilerplate objections that assert lack of personal knowledge, speculation, lack of authentication, and hearsay. Some of Comcast's objections, however – particularly regarding Mr. Aparicio's lack of personal knowledge of comparator employees' disciplinary records – have merit. Accordingly, with respect to those claims that survive summary judgment and for which Mr. Aparicio relies upon such evidence, the court has in turn relied upon only those portions that it believes are admissible at this juncture.

The Court declines, however, to address in this order each and every one of the boilerplate objections in Comcast's motion, given the fact that Comcast has not deemed these objections important enough to provide any argument. <u>Amaretto Ranch Breedables v. Ozimals Inc.</u>, 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012) (courts "need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development").

## CONCLUSION

The Court hereby grants Comcast's motion for summary judgment as to Mr. Aparicio's first claim for disability discrimination in violation of FEHA; second claim for failure to accommodate in violation of FEHA; third claim for failure for failure to engage in an interactive process in violation of FEHA; and fifth claim for retaliation in violation of FEHA. The Court further grants Comcast summary judgment on Mr. Aparicio's claim for punitive damages.

/ / /

/ / /

/ / /

/ / /

/ / /

The Court denies summary judgment on Mr. Aparicio's sixth and seventh claims for race and national origin discrimination under FEHA, fourth claim for failure to prevent discrimination under FEHA, and eighth claim for wrongful termination in violation of public policy.

**IT IS SO ORDERED.**

Dated:  August 11, 2017

_____
JON S. TIGAR
United States District Judge